Willie Eugene PITTS, et al.,
Plaintiffs-Appellants,

v.

Robert FREEMAN, et al.,
Defendants-Appellees.

No. 84–8286.

United States Court of Appeals,
Eleventh Circuit.

March 22, 1985.

Donald P. Edwards, David F. Walbert, Atlanta, Ga., for plaintiffs-appellants.

Gary M. Sams, Charles L. Weatherly, Decatur, Ga., for defendants-appellees.

Before VANCE and ANDERSON, Circuit Judges, and PITTMAN *, District Judge.

PITTMAN, District Judge:

In 1969, the district court issued a desegregation order that required the defendants to dismantle the previously dual school system and to institute a unitary system. In 1983, the black plaintiff class filed a motion in that proceeding to enjoin the defendants from expanding and constructing certain school facilities to relieve overcrowding at the Redan High School. In ruling on that motion, the district court, without giving notice and holding a hearing on the issue, stated that the DeKalb County School System was unitary. It proceeded to find that the defendants did not act with discriminatory intent and denied the injunction. The plaintiffs appealed. They contended the district court erred in characterizing the DeKalb system as unitary and in making proof of discriminatory intent a requisite to affording requested relief. We agree and reverse and remand for further consideration.

The plaintiffs raised these three issues:

I. Whether the district court erred in holding that the DeKalb County School System was a unitary system and that plaintiffs were therefore required, under the Fourteenth Amendment to the United States Constitution, to show purposeful discrimination in order to prevail.

II. Whether the district court erred in holding that plaintiffs must prove purposeful discrimination to prevail since the complaint in this action is predicated on Title VI of the 1964 Civil Rights Act and the regulations thereunder, and proof of invidious motives need not be shown in connection with such claims.

III. Whether the district court was clearly erroneous in finding that the plaintiffs had failed to show purposeful and intentional discrimination and whether

the court's findings were inadequate under Fed.R.Civ.P. 52.

We resolve issue I in favor of the appellants. Issue II was not addressed by the district court nor is it necessary to be addressed by this court. It may be appropriate to address it on remand. Issue III is moot because of the court's holding on the first issue.

The plaintiffs, in a black class action, originally instituted this action in 1968 against the DeKalb County Board of Education and various school authorities alleging that the DeKalb County School System was unconstitutionally segregated on the basis of race. The school system at that time operated under a "freedom of choice" plan. Although each school had a corresponding neighborhood school attendance district to delineate which students were to attend which school, students were free to transfer to schools outside their attendance district. The action resulted in a 1969 desegregation order that required the defendants to dismantle the previous dual school system, to eliminate its effects, and to institute a unitary system. The court ordered that all students be assigned to the school in their respective neighborhoods. Students thus were required to attend the school located in the attendance district in which they resided. Each attendance district contained only one school. The attendance districts served no other purpose than to delineate which students were to attend which schools. The district court retained jurisdiction to oversee implementation of the order. The court exercised this jurisdiction several times during the succeeding years to enter orders on matters brought before it by motion. This appeal arises from such an order in which the district court refused to enjoin the expansion and construction of certain school facilities proposed by the school board to relieve overcrowding at Redan High School.

---

* Honorable Virgil Pittman, U.S. District Judge for the Southern District of Alabama, sitting by designation.

Redan High School, which has a predominantly white student population, has been operating in excess of its capacity since the 1978–79 school year. The number of students attending Redan has continued to increase at such a rate that they exceeded the school's capacity by 808 students in the 1984–85 school year. As an interim solution to this overcrowding problem, school officials have added portable classrooms to Redan on three occasions. As a more permanent solution, the school board decided to construct a new facility to accommodate the excess of students. Under this "Redan II" plan, Redan's attendance district would remain unchanged. Students in the tenth through twelfth grades would continue to use the existing Redan High facility, while students in the eighth and ninth grades, who previously would have attended Redan High, would use the new facility. This arrangement would be unique in DeKalb County because it has no middle schools.

The plaintiffs in 1983 filed the motion that is the subject of this appeal seeking to enjoin the defendants from expanding the capacity of Redan High School by adding portable classrooms and constructing a new building. The plaintiffs alleged that the increased capacity of Redan, which would accommodate the existing overflow of white students there, avoided reassignment of those white students to nearby undercapacity high schools that were predominantly black. The school board's solution to the overcrowding, the plaintiffs argued, was intended to avoid desegregation and indeed would have a segregative effect. The plaintiffs argued that this avoidance of segregation—even if unintentional—violated the 1969 injunction requiring that the construction and expansion of school facilities be carried out "with the objective of eradicating segregation and perpetuating desegregation." *Pitts v. Cherry*, Civil Action No. 11946 at 7 (N.D.Ga. June 12, 1969) (currently *sub nom Pitts v. Freeman*). The plaintiffs proposed several alternative solutions to the Redan overcrowding problem. These proposals sought to relieve the overcrowding by redrawing the boundary lines of certain of the schools' attendance districts. The attendance districts as redrawn under the plaintiffs' proposals would require some students, who previously would have attended Redan, to attend other, undercapacity high schools within the DeKalb County School System. Unlike the defendants' plan, the plaintiffs asserted, these proposals would have a desegregative effect and would carry out the defendants' duty to eliminate the vestiges of its previous dual school system.

The district court, after a hearing, refused to enjoin the planned expansion of Redan High School on the grounds that the defendants' actions were not motivated by discriminatory intent. The court asserted at the outset that "[i]n 1969 the DeKalb County School System *was converted from a dual to a unitary system.*" *Pitts v. Freeman*, Civil Action No. 11946 at 1 (N.D.Ga. Feb. 22, 1984) (emphasis added). It is undisputed that no hearing with notice had been held to determine whether the DeKalb County School System had been converted to a unitary system. The court proceeded to hold that in reviewing the planned expansion of Redan High School, it had to "examine whether defendants' actions were unlawfully motivated and were designed to deprive class members of equal protection of the law." *Id.* at 5. "At issue," the court stated, "is whether defendants' actions in proposing an addition to Redan were discriminatory or designed to promote segregation and to hinder desegregation in the DeKalb County School System." *Id.* at 1. The court then found, on the basis of the evidence presented, that the defendants' decision to expand Redan High School "was not motivated by unlawful racial considerations." *Id.* at 8. It thus denied the plaintiffs' motion for an injunction. The court expressly declined to examine whether the plaintiffs' proposed solutions to the overcrowding would provide for better educational growth or more integration in the school system. *Id.* at 9.

The plaintiffs appealed, contending that the district court erred in characterizing the DeKalb County School System as unitary and in making proof of discriminatory intent a requisite to affording the request-

ed relief. This court agrees, and, therefore, must reverse the district court's decision and remand the case for further consideration.

A line of Fifth Circuit cases [1] established the procedure to be used in this circuit in bringing school desegregation cases to a conclusion. *See, e.g., United States v. Texas Education Agency,* 647 F.2d 504 (5th Cir.1981) (Unit A), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 295 (1982); *Lee v. Macon County Board of Education,* 584 F.2d 78 (5th Cir. 1978). The courts consistently have recognized that a previously segregated dual school system does not automatically become desegregated just because a constitutionally acceptable plan is adopted and implemented. *See, e.g., Texas Education Agency,* 647 F.2d at 508. District courts must retain jurisdiction over such cases to insure not only the implementation of the desegregation plan but also "the achievement of the ultimate goal—a unitary school system in which the State does not discriminate between public school children on the basis of race." *Lee,* 584 F.2d at 81. In order to conclude a school desegregation case, a district court must hold a hearing to determine if the school system indeed has achieved unitary status. *Texas Education Agency,* 647 F.2d at 509; *Youngblood v. Board of Public Instruction of Bay County,* 448 F.2d 770, 771 (5th Cir.1971). The plaintiffs should receive notice of the hearing's purpose, and the hearing should give them an opportunity to show why the court should continue to retain jurisdiction. *Texas Education Agency,* 647 F.2d at 509.

The district court did not follow these procedures in the case at bar. Its characterization of the DeKalb County School System as unitary was error. As the defendants suggest, it is possible that the district court did not intend its use of the word "unitary" to be equated with the unitary status that requires dismissal of the action. The court may have been stating merely that a constitutionally acceptable desegregation plan was implemented in

1969 thus making the school system unitary in some respects. Yet the district court committed error by applying the wrong standards of proof when it proceeded to require the plaintiffs to prove discriminatory intent, a requirement that ordinarily would be appropriate only after a finding of full unitary status.

Until the DeKalb County School System achieves unitary status, it has an affirmative duty to eliminate the effects of its prior unconstitutional conduct. The United States Supreme Court has held that a previously segregated school system is under an "affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." *Columbus Board of Education v. Penick,* 443 U.S. 449, 459, 99 S.Ct. 2941, 2947, 61 L.Ed.2d 666 (1979), *quoting Green v. County School Board,* 391 U.S. 430, 437–38, 88 S.Ct. 1689, 1693–94, 20 L.Ed.2d 716 (1968). *See Graves v. Walton County Board of Education,* 686 F.2d 1135, 1143 (5th Cir.1982) (Unit B). The Court has applied this duty specifically to the construction of new school facilities:

> In devising remedies where legally imposed segregation has been established, it is the responsibility of local authorities and district courts to see to it that future school construction and abandonment are not used *and do not serve* to perpetuate or re-establish the dual system.

*Swann v. Charlotte-Mecklenburg Board of Education,* 402 U.S. 1, 21, 91 S.Ct. 1267, 1279, 28 L.Ed.2d 554 (1970) (emphasis added). *See Lee v. Autauga County Board of Education,* 514 F.2d 646, 647–48 (5th Cir. 1975). The district court's 1969 desegregation order in this case applied these duties to DeKalb County:

> To the extent consistent with the proper operation of the system, the County Board will, in locating and designing new schools, in expanding existing facilities, and in consolidating schools, do so with

---

1. Decisions of the old Fifth Circuit are binding precedent in this circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206, 1209–11 (11th Cir.1981) *(en banc).*

the objective of eradicating segregation and perpetuating desegregation. *Pitts v. Cherry*, Civil Action No. 11946 at 7 (N.D.Ga. June 12, 1969) (currently *sub nom Pitts v. Freeman* ). Therefore, the DeKalb County Board of Education has an affirmative duty to solve the Redan High School overcrowding problem in such a way that it furthers desegregation and helps eliminate the effects of the previous dual school system.

■ In light of the defendants' affirmative duty to desegregate, it was error for the district court to hold that the defendants' planned expansion of Redan High School could be enjoined only if it was motivated by discriminatory intent. Until the DeKalb County School System achieves unitary status, official action that has the *effect* of perpetuating or reestablishing a dual school system violates the defendants' duty to desegregate. *See Wright v. Council of City of Emporia,* 407 U.S. 451, 460–62, 92 S.Ct. 2196, 2202–03, 33 L.Ed.2d 51 (1972). *Accord Columbus Board of Education,* 443 U.S. at 459–60, 99 S.Ct. at 2947–48. That duty likewise is violated when the school board fails to consider or include the objective of desegregation in such decisions as whether to construct new facilities. *See Lee,* 514 F.2d at 647–48. Therefore, if expanding the capacity of Redan High School would increase or perpetuate segregation as the plaintiffs claim, the district court should have enjoined the expansion; or, if expansion plans and construction have mooted that question, it should have enjoined the use of the facility as planned—regardless of the defendants' lack of discriminatory intent.

[6] We do not hold, however, that the defendants' affirmative duty compels them to adopt the most desegregative alternative available. That position was rejected by this court in *Lee v. Anniston City School System,* 737 F.2d 952 (11th Cir.1984). There we affirmed the district court's approval of a new construction proposal which was proposed by the school board in good faith, and which, although the court assumed that the plaintiff's proposals would achieve even greater desegregation, would "achieve greater desegregation within the limits of practicalities such as funding and transportation." *Id.* at 957.

Therefore, this court must remand this case for the district court to do what it expressly declined to do before: examine the segregative and desegregative effects of the defendants' actions. On remand, the district court should study plaintiffs' and defendants' alternative solutions to the overcrowding problem to find the solution that best solves the problem in light of the valid educational concerns and other practicalities voiced by the defendants if the system is attempting to achieve greater desegregation. This court does not hold that the district court on reconsideration must enjoin the planned expansion of Redan High School if plans and construction of the facilities have mooted such action; however, the defendants will proceed at their own risk. One result could be the enjoined use of the facilities as planned.

Several of the district court's factual findings argue in favor of the defendants' plans. The district court relied on erroneous standards in drawing its conclusions. It may be that these plans would have a desegregative effect or would have less long-term segregative effect. The court remands the case to have the district court review the defendants' actions under the proper standards.

Because this court remands this action on the basis of the district court's misapplication of an intent standard, it does not address the second or third issue.

REVERSED AND REMANDED for proceedings consistent with this opinion.