United States Court of Appeals,

Eleventh Circuit.

No. 94-8204.

Valencia MILLS, a minor, by her parents and next friends, Berta Mills and Roger Mills, Adesina, Adreana, and Ardona Scott, minors, by their parents and next friends, Cynthia Scott and Major Scott, Plaintiffs-Appellants, Cross-Appellees,

Ashley and B'randi Armstrong, minors, by their father and next friend, Harold M. Armstrong, Haraja and Jihan El-Shabazz, minors, by their parents and next friends, Asahita El-Shabazz and Narwanna El-Shabazz, James Somerville, a minor, by his mother and next friend, Carolyn Saunder, Nathan Jones, a minor by his parents and next friends, Carolyn Jones and Wayne Jones, Nadrah Malik, Mangoor Falah, and Salim Sabir, minors, by their parents and next friends, Mahasin Sabir and Adib Sabir, Christina Thomas, a minor, by her mother and next friend, Grace Thomas, Michael, Steven and Nicholas Creamer, minors, by their mother and next friend, Marguerite Creamer, Sandi and Karla Bailey, minors, by their parents and next friends, Evelyn Bailey and Larry Bailey, Brandon Russell, a minor, by his parents and next friends, Karen Russell and Kevin Russell, Michael, Gerald and Lacy Perry, minors, by their mother and next friend, Nina Perry, Darius and Kevin McVay, minors, by their father and next friend, William McVay, Julia Stewart, a minor, by her mother and next friend, Rose Stewart, Jeezanhay, Halani and Tashiana Blake, minors, by their mother and next friend, Betty Blake, Plaintiffs-Intervenors,

v.

Robert R. FREEMAN, Superintendent, Elizabeth Andrews, Norma Bergman, Phil McGregor, Lyman Howard, Donna Wagner, David Williamson and Paul Womack, as DeKalb County Board of Education, members, Defendants-Appellees, Cross-Appellants.

Aug. 6, 1997.

Appeals from the United States District Court for the Northern District of Georgia. (No. 11946-WCO), William C. O'Kelley, Judge.

Before HATCHETT, Chief Judge, BARKETT, Circuit Judge, and PROPST[*], Senior District Judge.

PER CURIAM:

Appellants, Valencia Mills and a class of individuals composed of all black children enrolled in the Dekalb County School System and their parents and legal guardians (collectively, appellants), appeal the district court's order concerning attorney's fees for work performed on various issues during the final years of this litigation. We affirm.

## I. BACKGROUND

Appellee, the Dekalb County Board of Education (the DCBE), operates the Dekalb County

---

[*]Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

School System (the DCSS).[1]  Historically, in accordance with state law and its own policies, the DCSS conducted a segregated system of education with separate schools for black and white school children.  Despite the order of the Supreme Court in *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), declaring all segregated schools unconstitutional, and the Court's subsequent order in *Brown II* that all segregated schools were to desegregate with "all deliberate speed," *Brown v. Board of Education,* 349 U.S. 294, 301, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955), the DCSS remained essentially segregated in 1968, when appellants filed the underlying action on behalf of all black Dekalb County school children.  On June 12, 1969, the United States District Court for the Northern District of Georgia enjoined the DCSS from discriminating on the basis of race and ordered the school system to eliminate the effects of the old dual system.  The court ordered the DCSS to close all *de jure* black schools and to establish a neighborhood school attendance policy.  The court also retained jurisdiction in order to ensure compliance.  *Pitts v. Cherry,* No. 11946, slip op.  (N.D. Ga. June 12, 1969).  Both parties sought modifications of the desegregation plan and additional relief, not relevant to this appeal, from 1975 through 1983.

In response to appellants' seeking additional relief in 1983, the district court held that the DCSS had attained unitary status.  The appellants appealed to this court, and we reversed, holding, among other things, that the district court had improperly declared the DCSS to be a unitary system without first notifying appellants and conducting a hearing on that issue.  *Pitts v. Freeman,* 755 F.2d 1423, 1426 (11th Cir.1985).  In January 1986, the DCSS filed a motion for final dismissal in the district court, seeking a declaration that it had achieved unitary status.  On June 30, 1988, after conducting a three-week bench trial, the district court granted the DCSS's motion in part and denied it in part, ordering supplemental relief in the areas of teacher and principal assignments, quality of education and resource allocation (the June 1988 order).  The court, however, concluded that the DCSS had achieved unitary status in student assignments, transportation, physical facilities and extra-curricular activities.  The district court certified its order for immediate appeal pursuant to 28

---

[1]We will use the term "the DCSS" to refer to the DCBE, appellee Robert Freeman, who was its former superintendent, and appellee James Hallford, his successor.

U.S.C. § 1292(b), and both parties appealed to this court. In October 1988, this court allowed the appeals to proceed, and Marcia Borowski replaced previous class counsel Kathleen Wilde with respect to the appeal of the June 1988 order. In October 1989, Borowski replaced Wilde completely as class counsel.

In July 1989, appellants filed motions objecting to the DCSS's methods of equalizing teacher resources between black and white schools. At that time, two groups of teachers, who also protested these methods, moved to intervene. The district court denied them intervention, and they appealed to this court. We affirmed the district court, and appellants received costs from the attempted intervenors. *Pitts v. Freeman,* 1989 WL 136924, No. 89-8612, slip op. (11th Cir. Nov.3, 1989).

In October 1989, this court held that the DCSS had not achieved unitary status. We agreed with the district court's conclusion that the DCSS had not fulfilled its obligations with respect to faculty and staff assignments, but reversed the court's decision that the schools were unitary in the area of student assignments. This court also rejected the DCSS's argument with respect to the distribution of educational resources. *Pitts v. Freeman,* 887 F.2d 1438, 1447-48, 1450 (11th Cir.1989) (*Pitts I*). In November 1989, this court denied the DCSS's petition for rehearing and rehearing *en banc.* In addition, on December 13, 1989, this court granted appellants' motion—filed in this court—for appellate attorney's fees, and remanded to the district court for a determination of the appropriate amount. Seven days later, appellants filed a motion for attorney's fees and costs on appeal in the district court (the first fee petition), and the DCSS opposed the motion. The DCSS filed a petition for *certiorari* in the Supreme Court in 1990, which the Supreme Court granted in 1991. In March 1990, the district court stayed consideration of the first fee petition pending determination of the DCSS's writ petition.

Also in March 1990, a group of parents of and on behalf of black children in the school system moved to intervene in the remedial phases of this action (the intervenors). Specifically, the intervenors believed that the appellants' advocacy of large-scale involuntary busing to achieve strict racial quotas sacrificed the quality of education that the children would receive. In response, the DCSS filed a motion neither opposing nor supporting the motion to intervene. The DCSS

interpreted the proposed intervention as a challenge to the adequacy of the class and wanted the court to ensure that the class was sufficiently represented so that the results of any further proceedings would be binding on the entire class. In April 1990, the DCSS filed an additional motion, requesting a hearing to determine the issue of class adequacy. Appellants, however, opposed the intervention, arguing that no intervention as a matter of right existed in class action school desegregation cases and that the intervenors should not be granted permissive intervention. Appellants asserted, among other things, that the intervenors did not represent an identifiable class or subclass, the intervention attempt was untimely, and the current class adequately represented the interests of the intervenors. The court held a hearing on this and related issues and, in December 1990, concluded that appellants and their counsel were not inadequate *per se* and thus should not be replaced. The court, however, did allow the parents to intervene because of the appellants' limited view of the potential remedies in this case. Appellants appealed this interlocutory order, and the intervenors cross-appealed. This court, however, dismissed both appeals for lack of jurisdiction. *Mills v. Freeman,* No. 91-8065 (11th Cir. June 13, 1991) (order dismissing appeal and cross-appeal).

In January 1991, appellants filed a second fee petition pursuant to 42 U.S.C. § 1988, requesting attorney's fees and costs for the district court's December 1990 order establishing the adequacy of class representation and class counsel (the second fee petition). The DCSS opposed the petition on grounds including (1) that appellants had not prevailed on the merits, (2) the legal relationship between appellants and the DCSS had not changed to appellants' advantage and (3) the dispute was among class members. Noting that the appellants themselves had appealed the December 1990 order to this court, and that the Supreme Court had granted the DCSS's writ of *certiorari* concerning this court's reversal of the June 1988 order in *Pitts I,* the district court deferred ruling on the second fee petition until this court and the Supreme Court decided the matters pending before them.

In March 1992, the Supreme Court reversed this court's decision in *Pitts I* and held that the district court had the authority to relinquish its supervision and control over the school system in incremental stages before unitariness had been achieved in every area of school operations.

*Freeman v. Pitts,* 503 U.S. 467, 490, 112 S.Ct. 1430, 1445, 118 L.Ed.2d 108 (1992). The Supreme Court remanded the case to this court for consideration of any unresolved issues and, if necessary, for remand to the district court. In December 1992, this court affirmed the June 1988 order of the district court and remanded the case for the court to consider faculty and staff assignments, resource allocation, quality of education and the good faith commitment of the school district. *Pitts v. Freeman,* 979 F.2d 1472, 1473 (11th Cir.1992) (*Pitts II*). Both the Supreme Court and this court ordered the parties to bear their own costs on appeal.

On May 14, 1993, Borowski moved to withdraw and filed her third fee petition for all of the services she and her law firm provided from November 1988 through May 1993, totaling $334,266.75 in fees and $11,239.32 in costs. Appellants argued that because they were the prevailing parties in the 1969 litigation, they would continue to be the prevailing parties until the DCSS was finally dismissed in its entirety from the court's supervision. Appellants included a monthly summary of hours expended and costs incurred, but not a detailed accounting because such accounting would reveal work product and attorney-client privileged matters. The DCSS filed a response, opposing appellants' request for attorney's fees and costs. The DCSS asserted, among other things, that (1) Borowski's activities did not generate any substantial benefits for the class, and thus the appellants had not achieved the requisite degree of success to obtain a fee award; (2) appellants had been paid fees and costs in connection with the June 1988 order; and (3) appellants were not entitled to fees for appellate work because the appellate courts had not awarded them fees or costs.

In January 1994, the district court granted Borowski's petition to withdraw and denied the first and second fee petitions and all costs. The district court denied the first fee petition based on the belief that it did not have the authority to award fees for appellate work in the absence of orders from this court or the Supreme Court, and because the appellate courts had not ordered the DCSS to pay the appellants' costs on appeal. The court denied the second fee petition because it found that the parents' motion to intervene, essentially challenging the adequacy of class representation, was separate from the 1969 desegregation order, and, for the purposes of this issue, the appellants were

not prevailing parties. Finally, the court awarded appellants $56,233.75 in fees and $2,672.80 for paralegal assistance in connection with monitoring activities.[2] The district court denied appellants' request for $11,735.56 in costs, finding that they were not reasonably necessary to monitor the DCSS's compliance with the 1969 order. Appellants filed the instant appeal, and the DCSS cross-appealed.[3]

## II. CONTENTIONS

Appellants first contend that the district court erred in determining that they were not entitled to attorney's fees and costs in connection with their opposition of the parents' attempted intervention. Appellants argue that because (1) they have been the prevailing parties since the 1969 order, (2) they "substantially" prevailed on the issue; and (3) the DCSS initiated the challenge to the adequacy of class representation and class counsel, appellants are entitled to such fees and costs incurred in opposing the intervention. Appellants next contend that the court erred in reducing their monitoring fees and denying them costs. According to appellants, the court should have accepted their proffer for an *in camera* review of their detailed time sheets of their activities in connection with monitoring compliance with the 1969 order. Appellants assert that the time sheets contained information which supported a larger fee award for monitoring than the court granted and that they did not present the detailed documents because the documents also contained trial strategy and privileged material concerning the on-going litigation. Appellants' third contention is that the district court erred in failing to award attorney's fees for their appellate work. Appellants argue that costs under Federal Rule of Appellate Procedure 39 and fees pursuant to 42 U.S.C. § 1988 are not analogous. Therefore, according to appellants, the district court was not precluded from awarding fees merely because this

[2]Borowski requested fees for 2,610.65 hours of work on this case. After (1) concluding that the $125 per hour rate was reasonable; (2) subtracting 1,035 hours for appellate work and the intervention issues; and (3) further reducing the award by twenty-five percent for time that would not have been billable to a fee-paying client, duplicative work with other attorneys and Borowski's lack of practical experience, the court awarded Borowski fees for a total of 449.87 hours.

[3]On June 12, 1996, the district court concluded that the DCSS's constitutional violations had been fully remedied and granted the DCSS's motion for final dismissal from the court's supervision. Mills v. Freeman, 942 F.Supp. 1449, 1464 (N.D.Ga.1996). Appellants have not appealed that order.

court and the Supreme Court ordered both parties to bear their own appellate costs or because this court was silent on the issue of fees.

In response to appellants' first contention, the DCSS contends that the standard for awarding fees is the extent that the appellants have prevailed on each substantive issue and that appellants did not succeed in opposing the parents' intervention. With regard to appellants' monitoring fees claim, the DCSS cross-appeals and argues that because the record contains no evidentiary basis to support the fee award that the district court granted for monitoring activities, appellants should not have received any fees for monitoring. According to the DCSS, appellants never met their burden of submitting supporting documentation with their fee requests and could have protected any sensitive material through redaction. Finally, the DCSS contends that the district court did not have the authority to award attorney's fees or costs for appellants' appellate work because this court failed to do so on remand after the Supreme Court reversed this court's decision in *Pitts I.* The DCSS asserts that since this court's previous award of attorney's fees was based on *Pitts I,* that award was no longer viable.

## III. ISSUES

We discuss three issues in this case: (1) whether appellants are entitled to attorney's fees in connection with opposing the intervention of the parents; (2) whether the district court correctly awarded monitoring fees to the appellants; and (3) whether Borowski was entitled to attorney's fees for the work expended appealing the June 1988 district court order concerning the status of the school system.

## IV. DISCUSSION

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988, directs that "the court, in its discretion, may allow the *prevailing party,* other than the United States, a reasonable attorney's fee as part of the costs" incurred in certain proceedings to enforce civil rights. 42 U.S.C.A. § 1988(b) (West Supp.1997) (emphasis added). A prevailing party is one who " "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76

L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278-79 (1st Cir.1978)).  The party seeking the fees has the burden of submitting evidence in support of the hours and rates claimed and is entitled to recover those fees for hours that were "reasonably expended."  *Hensley,* 461 U.S. at 433-34, 103 S.Ct. at 1939-40.  The most critical factor in determining the award of attorney's fees is the degree of success that the party obtained.  *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941.  We review a district court's order for attorney's fees for abuse of discretion.  *Loranger v. Stierheim,* 10 F.3d 776, 779 (11th Cir.1994).  This court reviews the district court's findings of fact on issues of attorney's fees, however, under the clearly erroneous standard.  *Lattimore v. Oman Constr.,* 868 F.2d 437, 440 (11th Cir.1989).

The district court denied appellants' petition for attorney's fees with regard to work done to oppose the parents' motion to intervene in this case because it found that the challenge to the adequacy of class representation had no effect on the 1969 desegregation order and appellants' opposition to that motion was not reasonably related to monitoring compliance with the desegregation order.  In addition, the court found that the appellants were not prevailing parties with respect to the intervention issue because although appellants were not inadequate class representatives *per se,* they did not sufficiently represent the views of all of the class members.  As a result, the district court granted the parents' motion to intervene.

We agree that the appellants were not prevailing parties with respect to the intervention issue and find that the intervention claim was distinct from appellants' success on the 1969 desegregation order.  The motion to intervene concerned a challenge to the adequacy of the class and class counsel.  The court found that appellants failed to represent the views of all class members and thus allowed the intervention.  "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his [or her] successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."  *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1942.  The district court thus properly excluded the time spent opposing the intervention issue from the fees it awarded to appellants.

The second issue we address is whether the district court correctly awarded appellants fees

for their post-judgment monitoring activities.  The district court awarded appellants 449.87 hours for monitoring the 1969 desegregation order at a rate of $125 per hour and 66.82 hours for paralegal assistance at a $40 per hour rate.  The court denied any compensation for costs because the court found that they were not reasonably necessary to the monitoring.

We have previously granted attorney's fees for post-judgment monitoring in a civil rights case.  *See Miller v. Carson,* 628 F.2d 346, 348-49 (5th Cir.1980).[4]  The district court has wide discretion in exercising its judgment on determining an appropriate fee award.  *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1304 (11th Cir.1988).  Although the party seeking fees has the burden of supplying the court with detailed evidence from which the court can determine a reasonable fee, where that party presents inadequate documentation the court may determine a reasonable award based on its own experience.  *Norman,* 836 F.2d at 1303.  The court may also rely on affidavits in the record.  *Norman,* 836 F.2d at 1303.  In the present case, the district court based its award of fees on

> all three motions for attorney's fees and the supporting documents filed with them, all pleadings and other documents filed with the court, all hearing and conferences before this court, as well as information regarding all appeals, petitions, briefs, and motions filed with both the Eleventh Circuit and the Supreme Court on [appellants'] behalf.

*Mills v. Freeman,* No. 11946-WCO, slip op. at 33 (N.D.Ga. Jan. 20, 1994).  In addition, the court articulated the reasons for its decision and showed its calculations, allowing for a meaningful review of its judgment.  *See Norman,* 836 F.2d at 1304 (district court's order must allow for a meaningful review when the court uses its own expertise to award appropriate attorney's fees).  We conclude that the district court did not abuse its discretion in determining the amount to which appellants were entitled for their monitoring activities.

Finally, we address the issue of whether appellants should have been awarded attorney's fees for their work in appealing the June 1988 order of the district court granting in part and denying in part the DCSS's attainment of unitary status.  It is long established in this circuit that this court has

---

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc* ), this court adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

the discretion to award attorney's fees and costs for the work expended before it. *See Davis v. Roadway Express, Inc.,* 590 F.2d 140, 143 (5th Cir.1979) (this court has the discretion to award costs and fees for appellate work), *aff'd on other grounds,* 621 F.2d 775 (1980); *Universal Amusement Co. v. Vance,* 587 F.2d 159, 172-73 (5th Cir.1978) (same), *aff'd,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *Panior v. Iberville Parish Sch. Bd.,* 543 F.2d 1117, 1120 (5th Cir.1976) (same). In *Davidson v. City of Avon Park,* 848 F.2d 172, 173 (11th Cir.1988), we held that a district court is "not authorized, by local rule or otherwise, to control the filing time or assessment of attorney's fees for services rendered on appeal." If a party wishes to obtain fees on appeal, he or she must file a petition with the clerk of this circuit within fourteen days of the issuance of the opinion of this court. *Davidson,* 848 F.2d at 174 n. 4.

In the present case, this court initially awarded appellants attorney's fees for their work appealing the June 1988 order. The Supreme Court, however, reversed the decision underlying that award. *Freeman,* 503 U.S. at 490, 112 S.Ct. at 1445. Therefore, this court's previous order granting fees to appellants cannot be the basis for any subsequent fee award. *See Lattimore,* 868 F.2d at 440 (court rejected appellant's argument that appellee should not receive attorneys' fees because the appellee was not the original prevailing party in a previous appeal, which the *en banc* court later vacated); *cf. Furman v. Cirrito,* 782 F.2d 353, 355 (2d Cir.1986) (when the Supreme Court reverses a circuit court's order that included an award of costs to the then-successful appellee, any costs previously awarded are automatically vacated). After the Supreme Court's decision in *Freeman,* however, this court affirmed the June 1988 order and remanded to the district court to consider faculty and staff assignments, resource allocation, quality of education and the good faith commitment of the school district. *Pitts II,* 979 F.2d at 1473. At this time, appellants did prevail, in part, for the purposes of their appeal of the June 1988 order. *See Furman,* 782 F.2d at 355 (" "Prevailing party' has been variously interpreted to include an appellant who has had his [or her] case remanded to [the] district court...."). Appellants therefore had fourteen days from the issuance of this court's order on December 7, 1992, remanding the case to the district court, to file a petition with this court for attorney's fees for their appellate work. Because appellants failed to file such a

petition, and thus this court did not award attorney's fees, the district court did not have the authority to award appellants appellate fees.[5]

## V. CONCLUSION

For the foregoing reasons, we find that appellants were not prevailing parties for the purposes of the intervention issue. In addition, the district court did not abuse its discretion in its determination of fees for the monitoring efforts of appellants. Finally, we conclude that the district court did not have the authority to award attorney's fees for appellate work because appellants did not timely file a petition in this court for the work accomplished on the appeal of the June 1988 order of the district court. Accordingly, we affirm the district court's judgment.

AFFIRMED.

---

[5]The district court erred in concluding that because this court did not award appellants costs pursuant to rule 39, the court did not have the authority to award fees pursuant to section 1988. The award of costs pursuant to rule 39 is "separate and distinct from and totally unrelated to an award of attorney's fees pursuant to the directions of [section] 1988." Kelley v. Metropolitan County Bd. of Educ., 773 F.2d 677, 681-82 (6th Cir.1985) (citing Robinson v. Kimbrough, 652 F.2d 458, 463 (5th Cir. Aug.1981)), cert. denied, 474 U.S. 1083, 106 S.Ct. 853, 88 L.Ed.2d 893 (1986); see also Lattimore, 868 F.2d at 440 n. 6 (rejecting appellant's argument that this court's mandate requiring each party to bear its own costs on appeal precludes recovery of attorneys' fees for appellate representation pursuant to 42 U.S.C. § 2000e-5(k)).